Filed 12/15/15  P. v. Herrera CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ARTHUR MORENO HERRERA,<br><br>Defendant and Appellant. | F069092<br><br>(Super. Ct. No. VCF293175)<br><br>**OPINION** |

**THE COURT**\*

APPEAL from a judgment of the Superior Court of Tulare County.  Darryl B. Ferguson, Judge.

Emry J. Allen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Jeffrey A. White, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Kane, Acting P.J., Detjen, J. and Smith, J.

Defendant Arthur Moreno Herrera pled no contest plea to one domestic violence count and two drug counts. On appeal, he contends defense counsel provided ineffective assistance by advising him to plead no contest to the domestic violence charge. We affirm.

**PROCEDURAL SUMMARY**

On December 30, 2013, defendant was charged with infliction of corporal injury on a cohabitant (the victim) resulting in a traumatic condition (Pen. Code, § 273.5, subd. (a); count 1), possession of heroin (Health & Saf. Code, § 11350, subd. (a); count 2), and misdemeanor possession of a device for smoking or injecting a controlled substance (Health & Saf. Code, § 11364.1, subd. (a); count 3). The complaint further alleged that defendant had suffered a prior felony conviction (Pen. Code, §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and had served a prior prison term (Pen. Code, § 667.5, subd. (b)). Defendant pled not guilty and denied the allegations.

On January 10, 2014, defendant pled no contest to all three counts and admitted the prior prison term allegation. The trial court informed defendant that his maximum exposure was four years in prison. The court indicated it would strike the prior felony conviction allegation and grant felony probation.

The probation officer's report—typed on January 31, 2014, and filed on February 5, 2014—noted that on January 31, 2014, the probation department unsuccessfully attempted to contact the victim at her listed phone number. The department also failed to reach a witness at her listed phone number. The department then mailed a letter to the victim, requesting that she contact the probation department to give a statement. The probation officer's report stated that if the victim contacted probation before the sentencing hearing, the information would be forwarded to the court for its review.

At the sentencing hearing on February 5, 2014, the trial court granted defendant three years' probation with 180 days in county jail on count 3. The court imposed no time on counts 1 and 2.

## FACTS

The following facts are taken from the factual summary in the probation officer's report. On December 26, 2013, defendant's neighbors called the Tulare County Sheriff's Deputies and said they saw defendant chasing the victim and they believed he was assaulting her.

When the deputies arrived, they detained defendant and contacted the victim. She told them defendant's stepson had died, so she went into town to buy a gift for defendant. When she got home, she was locked out of the house. She called defendant to come open the door. He opened it and began yelling at her, accusing her of spending his money. He punched her on the right side of her head. She told him she had gone to buy him a gift. They went inside and stopped arguing. After providing this statement, she gave the deputies permission to search the house.

Defendant told the deputies the victim left home without telling him where she was going. Then she called while he was out and asked where he was. He refused to tell her and when she returned home, she began yelling at him. They went inside and stopped arguing. Defendant denied ever hitting, punching, or kicking the victim. He explained that she hit herself to get him in trouble.

The neighbors told the deputies they saw defendant chase the victim and threaten to punch her because she had spent all of his money.

When the deputies searched defendant, they found a syringe in his boot with a clear plastic cap packed with a cigarette filter containing heroin. Defendant stated he used the filter to consume the heroin left in a spoon. He said he had used heroin and smoked methamphetamine within the previous two days.

3.

**DISCUSSION**

Defendant contends defense counsel provided ineffective assistance of counsel because he should have known that the victim was unavailable and that the prosecution therefore could not prove the domestic violence charge beyond a reasonable doubt. He explains that reasonably competent counsel would have taken the time to adequately investigate the facts and defenses, would have learned that the prosecution had no complaining witness for trial, and would not have advised his client to enter a plea of no contest to the charge.

Defendant says he was prejudiced by this ineffective representation because it is reasonably probable he would have gone to trial had he known there was no viable case against him and no reason to plead to the charge. At trial, he would not have been convicted of the felony domestic charge and his sentence would have been at least as favorable as the one he obtained through the plea.

A defendant's claim that he was denied effective assistance of counsel has two components—deficient performance and prejudice resulting from it. (*Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*).)

First, the defendant must show that defense counsel's performance was deficient when reviewed by an objective standard of reasonableness under prevailing professional norms. (*Strickland, supra,* 466 U.S. at pp. 687-691; *People v. Anderson* (2001) 25 Cal.4th 543, 569.) The defendant has the burden of establishing, based on the record on appeal and on the basis of facts, not speculation, that counsel rendered ineffective assistance. (*People v. Williams* (1988) 44 Cal.3d 883, 917, fn. 12 (*Williams*);[1] *People v. Szeto* (1981) 29 Cal.3d 20, 35.) "It is not sufficient to allege merely that the attorney's tactics were poor, or that the case might have been handled more effectively. [Citations.]

---

[1]     If a defendant possesses evidence outside the appellate record to support a claim of ineffective assistance, he may seek relief by way of a petition for writ of habeas corpus. (*Williams, supra,* 44 Cal.3d at p. 917, fn. 12.)

[¶] Rather, the defendant must affirmatively show that the omissions of defense counsel involved a critical issue, and that the omissions cannot be explained on the basis of any knowledgeable choice of tactics." (*People v. Floyd* (1970) 1 Cal.3d 694, 709, disapproved on other grounds in *People v. Wheeler* (1978) 22 Cal.3d 258, 287, fn. 36.) "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" (*Hill v. Lockhart* (1985) 474 U.S. 52, 56 (*Hill*).)

Second, the defendant must show prejudice by showing that it is reasonably probable, but for defense counsel's failings, the result would have been more favorable to him. (*Strickland, supra,* 466 U.S. at pp. 687, 691-696; *People v. Anderson, supra,* 25 Cal.4th at p. 569.) The defendant "must carry his burden of proving prejudice as a 'demonstrable reality,' not simply speculation as to the effect of the errors or omissions of counsel." (*Williams, supra,* 44 Cal.3d at p. 937.) "The likelihood of a different result must be substantial, not just conceivable." (*Harrington v. Richter* (2011) 562 U.S. 86, 112.)

Where a defendant challenges a guilty or no contest plea based on ineffective assistance of counsel, the prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty [or no contest] and would have insisted on going to trial." (*Hill, supra,* 474 U.S. at p. 59, fn. omitted; *In re Resdendiz* (2001) 25 Cal.4th 230, 253, abrogated on another ground in *Padilla v. Kentucky* (2010) 559 U.S. 356, 370-371.) "[A] defendant's self-serving statement—after trial, conviction, and sentence—that with competent advice he or she would [not] have accepted a proffered plea bargain, is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice, and must be corroborated

independently by objective evidence. A contrary holding would lead to an unchecked flow of easily fabricated claims." (*In re Alvernaz* (1992) 2 Cal.4th 924, 938, italics omitted.)

"In many guilty [or no contest] plea cases, the 'prejudice' inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial. See, *e.g., Evans v. Meyer,* 742 F.2d 371, 375 (CA7 1984) ('It is inconceivable to us … that [the defendant] would have gone to trial on a defense of intoxication, or that if he had done so he either would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received'). As we explained in *Strickland v. Washington, supra,* these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.'" (*Hill, supra,* 474 U.S. at pp. 59-60.)

Here, defendant's claim of ineffective assistance of counsel rests entirely on speculation, and he is unable to show either a failing by defense counsel or a reasonable probability of a different outcome, as we will explain.

First, the record does not establish that defense counsel failed to investigate or that an investigation would have informed him that the victim and witness would not be

6.

available for trial. The record establishes only that the victim and witness could not be reached by phone on January 31, 2014, and that the probation department then sent a letter to the victim requesting she contact the department, which she apparently had not done during the following few days before the sentencing hearing on February 5, 2014.[2] The record does not establish that efforts to reach the victim and witness in the future would have been unsuccessful or that the victim and witness would not have testified at trial, contrary to defendant's speculative argument that there is no reason to believe the prosecution would have had "any better luck in locating [the victim] for purposes of producing her for trial." The record "establishes neither an actual failure to investigate nor a basis for concluding that evidence supportive of the [victim's and witness's unavailability for trial] was available and was not offered as a result of counsel's failure to discover it. A factual basis, not speculation, must be established before reversal of a judgment may be had on grounds of ineffective assistance of counsel." (*Williams, supra,* 44 Cal.3d at p. 933.)

Second, the record does not establish a reasonable probability that, even if defense counsel had advised defendant that the victim and witness were unavailable for trial, defendant would have insisted on going to trial. The People propose that if counsel had advised defendant that the victim and witness were unavailable, counsel would also have advised him that their unavailability at trial would not necessarily lead to his acquittal because the deputies who responded to the scene could testify at trial. Defendant counters that the deputies could not have established the charge at trial because they did not witness the underlying events and their repetition of the victim's statements would

---

[2]    Defendant rejects the People's representation that the probation department attempted to contact the victim only once. He states: "There were, in fact, multiple attempts." By "multiple" he means "two," in that he refers to the unsuccessful call and the letter following the unsuccessful call.

7.

have been inadmissible under *Crawford v. Washington* (2004) 541 U.S. 36 (*Crawford*).[3] As a result, he claims, he would have been acquitted of the charge.

But defendant's conclusion that the trial court would have excluded the deputies' testimony regarding the victim's statements as testimonial hearsay under *Crawford* is also mere speculation. In reality, the issue is a complex factual one that would require development of the facts beyond the brief summary provided in the probation officer's report. "First, … the confrontation clause is concerned solely with hearsay statements that are testimonial, in that they are out-of-court analogs, in purpose and form, of the testimony given by witnesses at trial. Second, though a statement need not be sworn under oath to be testimonial, it must have occurred under circumstances that imparted, to some degree, the formality and solemnity characteristic of testimony. Third, the statement must have been given and taken *primarily* for the *purpose* ascribed to testimony—to establish or prove some past fact for possible use in a criminal trial. Fourth, the primary purpose for which a statement was given and taken is to be determined 'objectively,' considering all the circumstances that might reasonably bear on the intent of the participants in the conversation. Fifth, sufficient formality and solemnity are present when, in a nonemergency situation, one responds to questioning by law enforcement officials, where deliberate falsehoods might be criminal offenses. Sixth, statements elicited by law enforcement officials are not testimonial if the primary purpose in giving and receiving them is to deal with a contemporaneous emergency, rather than to produce evidence about past events for possible use at a criminal trial." (*People v. Cage* (2007) 40 Cal.4th 965, 984, fns. omitted.) Testimonial out-of-court statements "must be

---

[3] Under the Confrontation Clause and *Crawford*, a testimonial statement from a witness who does not appear at trial is inadmissible against the accused unless the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine the witness. (*Crawford, supra,* 541 U.S. 36.)

Defendant describes the deputies' testimony as "unsworn, nontestimonial hearsay" under *Crawford*. We assume he means "testimonial."

made with some degree of formality or solemnity" and their "primary purpose [must] pertain[] in some fashion to a criminal prosecution." (*People v. Dungo* (2012) 55 Cal.4th 608, 619.) Statements elicited primarily to determine "current circumstances requiring police assistance" or to deal with an ongoing emergency situation, rather than to "prove some past fact" for use in a later criminal prosecution are not excluded under *Crawford.* (*People v. Cage, supra,* 40 Cal.4th at p. 982.) Based on its consideration of these many factors, the trial court would have made an admissibility determination that we are in no position to make on the current record. Defendant has not shown it is reasonably probable the evidence would have been excluded. Nor has he shown there is a substantial likelihood of a different result. (*Harrington v. Richter, supra,* 562 U.S. at p. 112.)

For these reasons, defendant's claims of ineffective assistance and prejudice fail.

## DISPOSITION

The judgment is affirmed.